# EXHIBIT A



August 15, 2024

<u>**Sent via SecureRelease Portal**</u>

U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street SW, Stop 5009
Washington, DC 20536-5009
Email: ICE-FOIA@dhs.gov

Re:   FOIA Request for Records Related to **U.S. Immigration and Customs Enforcement ("ICE")** Removal Flights and Transportation
(Fee Waiver & Expedited Processing Requested)

Dear Freedom of Information Officer:

This letter is a request for records ("Request") made pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, and the relevant implementing regulations, *see* 6 C.F.R. § 5 *et seq*. The Request is submitted by the American Civil Liberties Union Foundation of Southern California ("ACLU SoCal" or "Requestor"). Requestor seeks the disclosure of records related to the ICE Air Operation ("ICE Air") program from the period of January 1, 2023 through the present, including, but not limited to, contracts for operating removal flights and ground transportation to removal flights, and internal policies and procedures for handling flights with unaccompanied children, staging flights, and staffing flights.

Requester also seeks a fee waiver, pursuant to 5 U.S.C. § 552(a)(4)(A) and 6 C.F.R. § 5.11(k), and expedited processing, pursuant to 5 U.S.C. § 552(a)(6)(E) and 6 C.F.R. § 5.5(d). The justifications for the fee waiver and expedited processing are set out in detail below.

I.   <u>Background</u>

ICE maintains ICE Air to remove noncitizens from the United States by air. Over the past few decades, the institutional infrastructure behind these flights has shifted from a government-run operation by the U.S. Marshals Service on government planes, to a sprawling and opaque network of flights on privately-owned aircraft chartered by ICE Air.[1]

---

[1] Univ. of Wash. Ctr. for Human Rights, Hidden in Plain Sight: ICE Air and the Machinery of Mass Deportation (2019), https://jsis.washington.edu/humanrights/2019/04/23/ice-air/.

**EXECUTIVE DIRECTOR** Hector O. Villagra

**CHAIR** Carlos Amador  **VICE CHAIR** Connie Tcheng
**CHAIRS EMERITI** Michele Goodwin  Marla Stone  Shari Leinwand  Stephen Rohde  Danny Goldberg  Allan K. Jonas*  Burt Lancaster*
Irving Lichtenstein, MD*  Jarl Mohn  Laurie Ostrow*  Stanley K. Sheinbaum*

*deceased

**INLAND REGION OFFICE** • 3400 CENTRAL AVE, SUITE 230 • RIVERSIDE, CA 92506 • T 909.380.7510 • F 951.534.0453 • ACLUSOCAL.ORG

**EXHIBIT A
PAGE 12**

Page 2

Despite the critical role these flights play in the removal system—in many instances, serving as the mechanism of deportation—ICE Air remains shrouded in secrecy. Many ICE Air flights depart from small or remote airports; noncitizens departing on charter flights from major airports often board in hidden corners of the airport, away from the public eye. In Seattle, for instance, ICE positions buses to block the view of noncitizens boarding deportation flights from the road outside the airport.[2]

This secrecy has masked responsibility for serious abuses and danger on ICE Air flights. Passengers have remained bound and shackled for hours during unscheduled layovers, unable to use the bathroom.[3] Other passengers described how they were forcefully placed in body bags and tased while boarding their deportation flights.[4] ICE Air flights have suffered from troubling in-flight emergencies, including fires during crash landings and smoke in the cabins.[5] Shackled passengers struggle to evacuate during emergencies, and language barriers between the crew and passengers exacerbate the danger.

Requestor seeks to better understand how this system functions, including the actors involved in the deportation flights and internal agency procedures regarding the flights. This information is especially urgent given presidential-candidate Donald Trump's stated plan to arrest noncitizens on a vast scale and operate around-the-clock deportation flights if reelected in 2024.[6]

II.     Requestor

ACLU SoCal is a non-profit organization dedicated to defending and securing the rights granted by the U.S. Constitution and Bill of Rights. ACLU SoCal's work focuses on immigrants' rights, the First Amendment, equal protection, due process, privacy, and furthering civil rights for disadvantaged groups. As part of its work, ACLU SoCal monitors ICE enforcement practices and detention conditions. ACLU SoCal disseminates information to the public through its website and social media platforms, "Know Your Rights" documents, and other educational and informational materials. The ACLU SoCal regularly submits FOIA requests to DHS and other agencies – including, for example, on ICE's policies and practices for worksite immigration enforcement, and USCIS's policies and practices for the adjudication of naturalization applications – and publicizes the information it obtains through its website, newsletters, reports and "Know Your Rights" presentations and materials.

III.    Definitions

---

[2] McKenzie Funk, *At Seattle's Boeing Field, Real-Time Video Offers a Rare Glimpse of America's Troubled Deportation Flights*, Pro Publica, March 8, 2024, https://www.propublica.org/article/seattle-boeing-field-ice-deportation-flights.
[3] Complaint at 2, *Ibrahim v. Acosta*, No. 1:17-cv-24574-DPG (S.D. Fla. Dec. 19, 2017), ECF No. 3, https://www.documentcloud.org/documents/4391195-Somali-TRO-Complaint-December-19.html.
[4] Belal Hossain Biplob and Aviva Stahl, *South Asian Migrants Say They Were Put in 'Body Bags' for Deportation from US*, The Guardian (May 27, 2016), https://www.theguardian.com/us-news/2016/may/27/south-asian-migrants-body-bags-deportation-us.
[5] Angelika Albaladejo, *A Drunk Mechanic, Shackled Immigrants, a Crash Landing: The Dangers of ICE Flights*, Capital & Main (Nov. 4, 2021), https://capitalandmain.com/a-drunk-mechanic-shackled-immigrants-a-crash-landing-the-dangers-of-ice-flights.
[6] Ronald Brownstein, *Trump's 'Knock on the Door'*, Atlantic (Feb. 8, 2024), https://www.theatlantic.com/politics/archive/2024/02/trumps-immigration-plan-is-even-more-aggressive-now/677385/.

For the purpose of this Request, the terms listed below are defined as follows:

"DOCUMENTS" has the same scope used in Rule 34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing or record of every type and description and every tangible thing that is or has been in the possession, custody, or control of the federal agency or agencies that are the subject of this request and their employees, to which they have access, or of which they have knowledge, including, but not limited to, newspaper articles, magazine articles, news articles, correspondence, letters, contracts, files, electronic mail, memoranda, stenographic notes, handwritten notes, drafts, studies, publications, books, pamphlets, catalogs, purchase orders, receipts, advertisements, direct mail solicitations, point-of-sale and point-of-purchase materials, notebooks, diaries, models, devices, pictures, photographs, films, audiotapes, videotapes, computer records, voice recordings, maps, reports, surveys, minutes, data compilations, and statistical compilations, regardless of whether a particular DOCUMENT is privileged or confidential, and regardless of the form of storage (including, but not limited to, paper, microfiche, magnetic tape, magnetic disk (hard disk or floppy disk), CD-ROM, DVD, optical disk, or electronic storage device).

"ICE" means Immigration and Customs Enforcement, and any components, subcomponents, offices, or personnel therein.

IV. Records Requested

This Request seeks, for the period from January 1, 2023 through the present, the following records:

1) All ICE contracts in effect during any portion of the designated time period, including any addenda, attachments, and incorporated DOCUMENTS, regarding air transportation to execute removals, including flights leaving the United States and domestic flights to transport noncitizens in between detention sites to stage for removals. This includes, but is not limited to, the following contracts:
    a) Award ID No. 70CDCR18FR0000002
    b) Award ID No. 70CDCR23FR0000035
    c) Award ID No. 70CDCR24FR0000024

2) All ICE contracts, including addenda, attachments, and incorporated DOCUMENTS, for ground transportation to transfer noncitizens to airports for removal flights.

3) DOCUMENTS sufficient to show the airfields ICE uses, or has access to, for removal flights.

4) Memoranda, guidance, or any other DOCUMENTS regarding ICE's policies or procedures for staging noncitizens, including unaccompanied noncitizen children, for removal prior to flights.

5) DOCUMENTS sufficient to show personnel required to be present on an aircraft to operate an ICE removal flight, including but not limited to, the flight crew, guards, and medical personnel.

Page 4

Please construe this as an ongoing FOIA request, so that any records that come into the possession of the agency prior to your final response to this FOIA request should also be considered within the request's scope.

V.  Fee Waiver Request

Requestor requests that any fees associated responding to its FOIA request be waived pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k). Pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k), fees should be waived or reduced if disclosure is (1) in the public interest because it is "likely to contribute significantly to public understanding of the operations or activities of the government" and (2) "not primarily in the commercial interest of the requester." Disclosure in this case meets both of these tests. Requestor also requests a waiver or reduction of fees on the grounds that it qualifies as "representative[s] of the news media" and the records are not sought for commercial use. *See* 5 U.S.C. § 552(a)(4)(A)(ii)(II); 6 C.F.R. § 5.11(d)(1).

> A. *Disclosure is in the public interest as it is likely to contribute significantly to the public's understanding of the operations and activities of government.*

*First*, disclosure pursuant to this Request is in the public interest for several reasons. As discussed above, the public has a strong interest in learning about ICE Air flights operated out of local airports. Reports of abuse and injuries on ICE Air flights heighten this public interest. And the high cost of ICE Air flights is a matter of both public and governmental concern. Finally, presidential-candidate Donald Trump's plan to use ICE Air as part of a mass deportation scheme if reelected in 2024 has garnered significant interest.

There is intense local interest in tracking where and how ICE conducts its removal flights. Across the country, local news organizations regularly report when ICE conducts removal flights from local airports.[7] Media reports also reflect public interest in the companies who receive contracts to operate removal flights.[8]

Immigration advocates track ICE Air's use of local airports. For instance, immigration advocates in Washington tirelessly tracked ICE Air flights out of King County International Airport ("Boeing Field"). In response to pressure from advocates and constituents, King County effectively banned deportation flights from Boeing Field until the federal government sued King County over the ban and successfully obtained an injunction against the ban.[9] Now that flights have resumed, interest remains strong. Immigration advocates and members of the public come

---

[7] *See, e.g.*, *ICE Conducts Repatriation Flight from Laredo Airport*, KGNS News (Aug. 16, 2023), https://www.kgns.tv/2023/08/16/ice-conducts-repatriation-flight-laredo-airport/ (Laredo, TX); Jerod MacDonald-Evoy, *'ICE Air' Flew More than 32K Immigrants Out of Mesa in Less Than 10 Months*, AZ Mirror (July 17, 2019), https://azmirror.com/2019/07/17/ice-air-flew-more-than-32k-immigrants-out-of-mesa-in-less-than-10-months/ (Mesa, AZ); Cat Ferguson, *ICE Used Oakland Airport to Deport and Transfer Tens of Thousands of Immigration Detainees*, Mercury News (July 21, 2019), https://www.mercurynews.com/2019/07/21/ice-used-oakland-airport-to-deport-and-transfer-tens-of-thousands-of-immigration-detainees/ (Oakland, CA).
[8] Sam Biddle, *Amazon Co-Owns Deportation Airline Implicated in Alleged Torture of Immigrants*, Intercept (Feb. 17, 2022), https://theintercept.com/2022/02/17/amazon-ice-deportation-flights-omni/.
[9] Simone Alicea, *Trump Administration Sues King County over ICE Flights from Boeing Field*, NPR: KNKX (Feb. 11, 2020), https://www.knkx.org/news/2020-02-11/trump-administration-sues-king-county-over-ice-flights-from-boeing-field.

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA

EXHIBIT A
PAGE 15

weekly to an observation room at the airport to view a video feed of ICE boarding the deportation flights there.[10]

Reports of abuses and injuries on ICE Air flights have increased the public's interest in understanding how ICE operates ICE Air.[11] In 2017, passengers on a deportation flight to Somalia reported that they were left bound and shackled in their seats for 23 hours during a stopover, some forced to soil themselves because they were denied bathroom visits.[12] A year later, the right landing gear collapsed as a plane carrying individuals in ICE detention touched down at an airport in Louisiana, sparking a fire on its wing, filling the cabin with the smell of burning rubber and sending shackled passengers racing toward the three functioning evacuation slides after one slide failed to deploy.[13] The next year, an individual in ICE's custody at the same Louisiana airport was rushed to the hospital after they tumbled from the top of the boarding stairs.[14]

Moreover, the expense of ICE flights is a matter of both governmental and public concern. ICE's contracts for air transportation are some of the agency's largest contracts, yet the agency fails to carefully monitor its air contractors. DHS's Office of Inspector General ("OIG") reviewed four air transportation contracts worth over $600 million.[15] OIG found that ICE "did not consistently use quality assurance surveillance to monitor contract performance" and "did not adequately review invoices to ensure expenses were correct, supported, and reasonable."[16] One media report indicated that ICE is paying nearly double the going rate to carry out "high-risk" deportation flights.[17]

Finally, presidential-candidate Trump, if reelected, plans to conduct mass arrests of noncitizens and operate round-the-clock deportation flights, garnering intense public scrutiny.[18] One of Trump's top immigration advisors, Stephen Miller, said that "the administration would schedule near-constant flights returning migrants to their home countries" meaning that "planes are moving off the runway constantly."[19] Trump's mass deportation plan has faced public outcry,

---

[10] *See* Funk, *supra* note 2.
[11] *See, e.g.*, Albaladejo, *supra* note 5 (reporting on various abuses on ICE Air flights); Lilly Ana Fowler, *ICE Deportation Flights Resume at King County's Boeing Field*, NPR: KNKX (May 10, 2023), https://www.knkx.org/social-justice/2023-05-10/ice-deportation-flights-resume-at-king-countys-boeing-field (referencing "documented incidents of abuse on ICE flights"); Biddle, *supra* note 8 (reporting on "horrific abuse" on ICE Air flights); Univ. of Wash. Ctr. for Human Rights, *DHS Document Reveals Allegations of Abuse on ICE Air Deportation Flights* (Aug. 16, 2019), https://jsis.washington.edu/humanrights/2019/08/16/ice-air-deportation-flight-complaints/ (describing dozens of complaints filed with DHS's Office of Civil Rights and Civil Liberties regarding "mistreatment, excessive force, and due process violations" on ICE Air flights).
[12] Funk, *supra* note 2.
[13] *Id.*
[14] *Id.*
[15] Dep't of Homeland Sec., Off. of Inspector Gen., ICE Should Improve Controls Over Its Transportation Services Contracts, at 1 (2023), https://www.oig.dhs.gov/sites/default/files/assets/2023-09/OIG-23-59-Sep23.pdf.
[16] *Id.* at 3.
[17] Justin Rohrlich, *The Sole Airline Willing to Operate "High-Risk" Deportation Flights Is Price-Gouging ICE*, Quartz (Dec. 5, 2019), https://qz.com/1761804/sole-airline-willing-to-deport-high-risk-immigrants-is-price-gouging-ice.
[18] *See, e.g.*, Charlie Savage, Maggie Haberman & Jonathan Swan, *Sweeping Raids, Giant Camps ad Mass Deportations: Inside Trump's 2025 Immigration Plans*, N.Y. Times (Nov. 11, 2023), https://www.nytimes.com/2023/11/11/us/politics/trump-2025-immigration-agenda.html; Philip Bump, *The Incomprehensible, Unattainable Scale of Trump's Deportation Plan*, Wash. Post (May 15, 2024), https://www.washingtonpost.com/politics/2024/05/15/trump-immigration-deportation-plan/.
[19] Brownstein, *supra* note 6.

Page 6

from fears that it will undermine the rule of law and due process, to concerns that staffing and funding the system could weaken other federal agencies, to worries about the economic and fiscal impact of removing a significant slice of the workforce.[20] The public, therefore, has a strong interest in understanding this essential component of Trump's proposed deportation apparatus.

In sum, disclosure of the requested records will shed light upon the ICE Air removal system. The requested records will thus contribute significantly to the public's understanding of ICE's removal process.

### B. Disclosure is not primarily in the commercial interest of the Requestor.

*Second*, Requestor is not filing this request to further a commercial interest. The Requestor is a 501(c)(3) nonprofit organization that intends to disseminate the information gathered by this request to the public at no cost, including through the Requestor's website and social media. The ACLU SoCal regularly disseminates information to its members through action alerts, emails and newsletters (the ACLU SoCal has more than 28,000 members). *See* http://www.aclusocal.org/about/. Requestor may also compile a report or other publication on the government's treatment of immigrants based on information gathered through this FOIA. Requestor has repeatedly used information gathered through FOIA to disseminate information to the public through such forums. *See, e.g.*, http://www.aclu.org/immigrants-rights/immigrant-detainee-rights-are-routinely-systematically-violated-new-report-finds (ACLU SoCal report based on documents disclosed through FOIA). *See also* http://www.aclusocal.org/about/report-directory/ (compiling recent ACLU SoCal reports). For example, based on information obtained from a February 2018 FOIA for records about ICE's practice of misrepresenting or concealing their identity when conducting enforcement actions, ACLU SoCal has both sued to stop this practice and provided community resources on it.[21] Thus, the records requested are not sought for commercial use and Requestor plans to disseminate the information disclosed as a result of this Request to the public at no cost.

### C. Requestor also qualifies for a fee waiver because it is a representative of the news media and the records are not sought for commercial use.

Requestor is also entitled to a waiver of search fees on the grounds that it qualifies as "representative[s] of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). Requestor meets the statutory and regulatory definitions of "representative[s] of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(III); *see also Electronic Privacy Information Center v. Department of Defense*, 241 F. Supp. 2d 5 (D.D.C. 2003) (non-profit organization that gathered information and published it in newsletters and otherwise for general distribution qualified as representative of news media for purpose of limiting fees). Courts have reaffirmed that nonprofit requestors who are not traditional news media outlets can qualify as representatives of the new media for the purposes of the FOIA, including after the 2007 amendments to the FOIA. *See ACLU of Washington v. U.S. Dep't of Just.*, No. C09-0642RSL,

---

[20] *Id.*; Ctr. for Migration Studies of N.Y., How Trump's Mass Deportation Plan Would Hurt the United States (Mar. 27, 2024), https://cmsny.org/how-trump-mass-deportation-plan-would-hurt-usa/.

[21] *See* ACLU of S. Cal., Kidd v. Mayorkas (last visited Aug. 2, 2024), https://www.aclusocal.org/en/cases/kidd-v-mayorkas (describing lawsuit and case developments); ACLU of S. Cal., ICE Not Welcome: Verify, Document, and Report (last visited Aug. 2, 2024), https://www.aclusocal.org/icenotwelcome (community resources).

Page 7

2011 WL 887731, at *18 (D. Wash. Mar. 10, 2011) (finding that the ACLU qualifies as a "representative of the news media").

In sum, because disclosure of the requested documents is in the public interest and not primarily in the commercial interest of the Requestor, and Requestor is a representative of the news media, Requestor is entitled to a total waiver of fees associated with this Request and should, in no event, be required to pay more than reasonable standard charges for document duplication. In the event that you decide not to waive the fees, please provide us with prior notice so that we can discuss arrangements.

VI.   Expedited Processing Request

Requestor requests expedited processing of this Request pursuant to 5 U.S.C. § 552(a)(6)(E) and 6 C.F.R. § 5.5(e). There is a "compelling need" for these records, as defined in the statute, because the information requested is "urgen[tly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II); *see also* 6 C.F.R. § 5.5(e)(1)(ii).

   A. *Requestor is an organization primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.*

Requestor is "primarily engaged in disseminating information" within the meaning of the statute. 5 U.S.C. § 552(a)(6)(E)(v)(II). As detailed *supra*, Requestor has the ability and intention to widely disseminate the requested information through a variety of sources, including reports, newsletters, news briefings, right-to-know handbooks, and other materials, to the public at no cost. Indeed, obtaining information about government activity, analyzing that information, and widely publishing and disseminating that information to the press and public are critical and substantial components of Requestor's work and are among its primary activities. *See ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information"). Moreover, as mentioned *supra*, Requestor intends to distribute the information obtained through this FOIA request via its website and/or other means available to it.

   B. *The records sought are urgently needed to inform the public about actual or alleged government activity.*

The requested records are also urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II). Specifically, the requested records pertain to ICE's air removal operations. As described *supra*, this is a matter of widespread media and public interest, and the requested records will inform the public concern of this activity by ICE. 5 U.S.C. § 552(a)(6)(E)(i)(I). Removal of noncitizens, including the manner by which it occurs, is a matter subject to significant public debate. As identified here, various advocacy groups have expressed serious concerns regarding the lack of transparency and information available regarding ICE Air's operations. This Request will shed critical light on ICE's removal processes.

This information is particularly urgent given presidential-candidate Trump's plans to implement a mass deportation system if reelected in 2024. As discussed above, one of the

cornerstones of Trump's proposed removal apparatus is running constant deportation flights. The public, the media, and Congress are all urgently trying to understand this plan. Understanding the feasibility of building out ICE Air's capacity first requires knowing what contracts are presently in place, ICE Air's current capacity, and any ICE Air policies or practices currently in place.

Furthermore, denial of expedited disclosure of the requested records could "reasonably be expected to pose an imminent threat to the life or physical safety of an individual." 5 U.S.C. § 552(a)(6)(E)(v)(I); 6 C.F.R. § 5.5(e)(1)(i). ICE Air has generated troubling reports of passenger mistreatment and in-flight emergencies. As described *supra*, passengers on one deportation flight were left bound and shackled in their seats for 23 hours during a stopover, without the opportunity to use the bathroom.[22] In another instance, a plane chartered by ICE Air had its landing gear collapse as the plane touched down, sparking a fire in the wing and leading to a chaotic evacuation where one evacuation slide failed to deploy.[23] And what little information is available publicly suggests that medical attention on flights is lacking; complaints filed with ICE document heart attacks, a miscarriage, and even death on ICE Air flights.[24] A review of the contracts, policies, and procedures for ICE Air flights will enable organizations to assess the efficacy of ICE's oversight of deportation flights and to understand what precautions, if any, contractors are obligated to take to protect the safety of passengers on ICE Air flights. Without such transparency, individuals subject to removal may continue to suffer from unsafe conditions on removal flights without adequate oversight or accountability. Given the foregoing, Requestor has satisfied the requirements for expedited processing of this Request.

I affirm that the information provided supporting the request for expedited processing is true and correct to the best of my knowledge and belief. *See* 5 U.S.C. § 552(a)(6)(E)(vi); 6 C.F.R. § 5.5(e)(3).

VII.   Conclusion

Thank you for your prompt attention to this Request. We look forward to your reply to this Request within ten (10) business days, as required under 5 U.S.C. § 552(a)(6)(E)(ii) and 6 C.F.R. § 5.5(e)(4).

Please call me at (909) 380-7505 or email me at ebitran@aclusocal.org if you have any questions or wish to obtain further information about the nature of the records in which we are interested. Please furnish the applicable records via email (ebitran@aclusocal.org).

If the records must be sent via U.S. Mail, please send to the following address:

Eva Bitran
ACLU of Southern California
1313 W. 8th Street
Los Angeles, CA 90017

If this Request is denied in whole or part, we ask that you justify all deletions by reference to

---

[22] Funk, *supra* note 2.
[23] *Id.*
[24] Angelika Albaladejo, *Death, Miscarriage and COVID-19: Inside ICE Air's History of Medical Neglect*, Capital & Main (Sept. 19, 2020), https://capitalandmain.com/death-miscarriage-and-covid-19-inside-ice-airs-history-of-medical-neglect-0919.

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA

EXHIBIT A
PAGE 19

Page 9

specific exemptions of the FOIA. We expect the release of all segregable portions of otherwise exempt material. We reserve the right to appeal a decision to withhold any information, or to deny a waiver of fees.

Sincerely,

Eva Bitran
ACLU of Southern California
1313 W. 8th Street
Los Angeles, CA 90017